UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| SANDRA MILLER, | ) |
| | ) |
|    *Plaintiff*, | ) |
| | ) |
| v. | )   No. 4:18-cv-76-SKL |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
|    *Defendant*. | ) |

## MEMORANDUM AND ORDER

Plaintiff Sandra Miller ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party has moved for judgment [Docs. 15 & 19], and filed supporting briefs [Docs. 16 & 20]. For the reasons stated below: (1) Plaintiff's motion for summary judgment [Doc. 15] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 19] will be **GRANTED**; and (3) the decision of the Commissioner will be **AFFIRMED**.

I.    **ADMINISTRATIVE PROCEEDINGS**

According to the administrative record [Doc. 11 ("Tr.")], Plaintiff filed her applications for DIB and SSI on October 20, 2015, alleging disability beginning October 5, 2013. Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on September 6, 2017, in Chattanooga, Tennessee. On January 31, 2018, the ALJ found Plaintiff was not under a disability

as defined in the Social Security Act at any time from the alleged onset date through the date of the decision.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II.     FACTUAL BACKGROUND

### A.     Education and Employment Background

Plaintiff was born August 23, 1959 (Tr. 188). She has at least a high school education, and is able to communicate in English. She has past relevant work as a janitor and as a quality control inspector, both of which are considered semi-skilled occupations in the Dictionary of Occupational Titles[1] ("DOT"). The janitor occupation is considered a medium exertional level job in the DOT, and the quality control inspector occupation is considered a light exertional level job.

### B.     Medical Records

In her Disability Report, Plaintiff alleged disability due to anxiety, depression, and a bulging disc (Tr. 272). While there is no need to summarize the medical records herein, the relevant records have been reviewed.

### C.     Hearing Testimony

At the hearing before the ALJ on September 6, 2017, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing. The Court has carefully reviewed the transcript of the hearing (Tr. 27-52).

---

[1] *Available at*: www.oalj.dol.gov/LIBDOT.HTM.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

### B. The ALJ's Findings

At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, October 5, 2013, although she had performed a limited amount of work as a cashier in 2016. At step two, the ALJ found Plaintiff had the following severe impairments: (1) lumbar spine L5-S1 multi-level spondylosis with hypertrophy, (2) L4-5 grade 2 anterolisthesis with degenerative disc disease, (3) depressive/bipolar disorder, (4) anxiety/obsessive-compulsive disorder. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional restrictions:

- She is unable to climb ladders, ropes, or scaffolds.

- She can only occasionally kneel, crouch, crawl, or stoop, but she can frequently climb ramps and stairs, and she has an unlimited ability to balance.

- She should avoid concentrated exposure to hazards.

4

- She is capable of only occasional, casual, work-related contact with the public, co-workers, and supervisors. She can respond appropriately to supervisors and co-workers, when the contact is work-related and casual.

- She can deal with only occasional routine workplace changes, and she can tolerate only non-confrontational supportive supervision.

(Tr. 18). At step four, the ALJ found Plaintiff remained capable of performing her past relevant work as a quality control inspector.

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between the alleged onset date and the date of the decision.

## IV. ANALYSIS

Plaintiff argues the ALJ erred in his assessment of the opinions offered by the two consultative examiners ("CEs") in this case: Jerry N. Campbell, Jr., Psy.D., who performed a psychological consultative examination; and Terrence Leveck, M.D., who performed a physical consultative examination. Plaintiff contends the error is harmful because these opinions support a sedentary exertional level RFC (or less). Given Plaintiff's age, education, and work history, a sedentary RFC would mean Plaintiff is unable to perform her past work, and further that she qualifies as automatically disabled under the Medical-Vocational Rules in Appendix 2 to Subpart P of 20 C.F.R. Part 404.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme

5

Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v.*

*Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B.     CE Opinions Generally

In considering a claim of disability, "the ALJ evaluates all relevant medical and other evidence and considers what weight" to assign to medical opinions from treating sources, examining sources, and nonexamining Disability Determination Services ("DDS") consultants, who simply review a claimant's medical record. *See Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). The regulations establish a hierarchy for these opinions, with treating source opinions at the top, followed by the CEs, then the nonexamining DDS consultants.

A medical opinion from a treating source must be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record.[2] 20 C.F.R. §§ 404.1527; 416.927;

---

[2] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule would apply, *see* 20 C.F.R. §§ 404.1527 & 416.927; however, there are no treating source opinions in this case.

7

*see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citation omitted). When an ALJ "give[s] a treating source's opinion less than controlling weight, she must give 'good reasons' for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (citations omitted). The stated reasons must be supported by the evidence in the record. *Gayheart*, 710 F.3d at 376 (citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (SSA July 2, 1996)). If a treating-source opinion is not given controlling weight, the ALJ must weigh the opinion based on all relevant factors set forth in the regulations, including the nature and length of the relationship, the specialization of the medical source, the consistency and supportability of the opinion, and other factors. *Id.* (citing 20 C.F.R. § 404.1527(c)(2)-(6)).

The opinions of consulting and nonexamining medical sources, however, are not subject to the treating physician rule. *See e.g., Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274-75 (6th Cir. 2015). That is, they are not entitled to "any special degree of deference." *Jagdeo v. Berryhill*, No. 3:17-CV-469-TWP-DCP, 2019 WL 1119363, at *10 (E.D. Tenn. Feb. 19, 2019) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)), report and recommendation adopted, 2019 WL 119642 (E.D. Tenn. Mar. 11, 2019). The ALJ must "evaluate" these opinions, and in doing so, must consider the relevant factors in 20 C.F.R. §§ 404.1527(c) & 416.927(c), the same factors used to analyze the opinion of a treating physician. And, while the ALJ is not required to give "good reasons" for the weight they assign to a CE opinion, there must be "evidence in the record from which the Court can conclude that the ALJ performed the evaluation of such opinions . . . ." *Lutz v. Comm'r of Soc. Sec.*, No. 2:14-cv-725, 2015 WL 1927779, at *8 (S.D. Ohio

8

Apr. 28, 2015), report and recommendation adopted, 2015 WL 1927779 (S.D. Ohio Sept. 15, 2015); *see also Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) (citations omitted) (ALJ is not required to "'give good reasons' for the weight he assigns opinions from physicians who . . . have examined but not treated a claimant.").

Regarding Dr. Campbell, the ALJ wrote:

> Jerry Campbell, Psy.D., consultatively examined the claimant in April of 2016, and assessed the claimant with a persistent depressive disorder, a generalized anxiety disorder (GAD) with panic attacks, and a history of alcohol abuse in full-sustained remission. The claimant complained of anxiety, daily panic attacks, and almost daily crying spells. The claimant stated she had never had any periods of inpatient hospitalization for mental health problems, and had never seen a mental health professional for outpatient treatment. The claimant exhibited only slight depression, slight anxiety, good hygiene, appropriate attire, intact orientation, good eye contact, normal speech, coherent understandable responses, clear logical thought processes, intact memory functions, an ability to follow instructions, average intelligence, and a good capacity for abstract thinking as well as understanding. The claimant denied having suicidal/homicidal ideations or hallucinations. Dr. Campbell did not detect any signs of delusions. Of note, Dr. Campbell observed the claimant possessed a normal gait and stature, and only mildly impaired short-term memory functions as well as concentration. **Dr. Campbell opined the claimant had marked limitations in adaptation, to which the undersigned accords some weight, since it is not fully consistent with the majority of the medical evidence, and appears too restrictive** (Exhibit 2F).

(Tr. 20 (emphasis added)).

Regarding Dr. Leveck, the ALJ wrote:

> Terrence Leveck, M.D., consultatively evaluated the claimant in April of 2016, and diagnosed the claimant with musculoskeletal back pain along with grade 2 L5-S1 anterolisthesis, and decreased ranges of low back motions. Dr. Leveck noted the claimant did not use any assistive devices. The claimant demonstrated normal grip as well as pinch strength, only mild low

> back pain with SLR, full ranges of extremity motions, full cervical spin movements, intact fine motor functions, and a normal station/gait. Dr. Leveck observed the claimant was able to walk on her heels and toes, to do a tandem gait, to stand independently on both lower extremit[ies] with merely mild difficulty, and to move between the chair and the table readily. Notably, Dr. Leveck also reported the claimant possessed normal speech, a normal mental status, and a normal mood. **Dr. Leveck determined [t]he claimant was able to stand/walk/sit eight of eight hours, with the need to take five-minute breaks every thirty minutes, and to lift/carry ten pounds occasionally. The undersigned assigns some weight to Dr. Leveck's medical opinions, since [they are] not completely consistent with Dr. Leveck's exam results or with the medical evidence as a whole (Exhibit 3F).**

(Tr. 20 (emphasis added)).

First, two points that apply to Plaintiff's arguments concerning both CEs: Plaintiff contends the ALJ erred by not providing "good reasons" for declining to defer completely to the CE opinions [Doc. 16 at Page ID # 438-39]. This argument is not well-taken because, as explained above, the CEs are not considered treating sources. Therefore, the ALJ was not required to provide "good reasons" for his decision not to adopt their opinions. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875-76 (6th Cir. 2007) ("the SSA requires ALJs to give reasons for only *treating* sources." (emphasis in original)).

Plaintiff also takes the position that the CEs are "Agency physicians," who are "deemed under the regulations to have expertise in the evaluation of disability in general, and in particular with respect to Social Security's programs." [Doc. 16 at Page ID # 441 (citing 20 C.F.R. § 404.1527(e)(2)(i))]. Plaintiff overstates the role of the CE, at least in this particular case. The SSA might pay for the services of a CE, but a CE is not necessarily an employee of the SSA or the State DDS. *See* 20 C.F.R. §§ 404.1519 ("A consultative examination is a physical or mental examination or test purchased for you at our request and expense from a treating source or another

10

medical source, including a pediatrician when appropriate."); 404.1519q ("Physicians and psychologists who do review work for us will not perform consultative examinations for us without our prior approval."). Moreover, while the regulations provide that "medical sources who perform consultative examinations will have a good understanding of [the] disability programs and their evidentiary requirements," that does not mean CEs are "deemed experts" in disability programs, as Plaintiff contends. In addition, 20 C.F.R. § 404.1527(e)(2)(i), which Plaintiff cites in support of this argument, refers to "opinions of **nonexamining** sources."[3] The Court notes the ALJ properly cited to the nonexamining DDS consultants' expertise when weighing their opinions (Tr. 21).

### C. Psychological CE - Dr. Campbell

Turning next to the issues specifically concerning Dr. Campbell, who performed a psychological consultative exam, the ALJ noted the nature of the relationship, and the ALJ identified Dr. Campbell as a Doctor of Psychology (Psy.D.). This covers two of the factors in 20 C.F.R. §§ 404.1527(c) & 416.927(c), the nature of the relationship and any specialization of the source.

---

[3] Subpart (e)(2)(i), and the language contained therein which Plaintiff relies on, have been eliminated from the most recent versions of 20 C.F.R. §§ 404.1527 & 416.927 (Evaluating opinion evidence for claims filed before March 27, 2017). The new version became effective March 27, 2017, well before the ALJ's decision. It removes the "expertise" language Plaintiff cites. A medical source's familiarity with "disability programs and their evidentiary requirements" is still relevant when an ALJ weighs that source's opinion; however, no sources are "deemed experts," and program familiarity can be considered, regardless of the source of the familiarity, and regardless of whether the medical source examines, treats, or simply reviews the records of the claimant. 20 C.F.R. §§ 404.1527(c)(6); 416.927(c)(6).

The ALJ also considered the consistency factor, particularly with regard to Dr. Campbell's opinion that Plaintiff "shows evidence of a marked impairment in her ability to adapt to change due to her anxiety attacks." (Tr. 313). The ALJ assigned this opinion only "some weight," finding "it is not fully consistent with the majority of the medical evidence, and appears too restrictive." (Tr. 20). Plaintiff attacks the ALJ's consideration of this factor, arguing the ALJ made "highly selective references to the record," which Plaintiff contends "are not a sufficient basis to reject the undisputed opinions" of Dr. Campbell. Plaintiff's argument is not well-taken.

For one, the only piece of evidence Plaintiff cites as an example of key evidence the ALJ overlooked is her "daily anxiety attacks." [Doc. 16 at Page ID # 444]. But the ALJ clearly considered evidence about Plaintiff's anxiety attacks. The ALJ wrote:

> At the disability hearing, the claimant testified she is unable to work, mainly due to constant excruciating lower back pain, severe daily panic attacks, and severe anxiety. . . . She explained she experiences panic attacks and anxiety even when nothing is wrong. The claimant reported her panic attacks are accompanied by breathing problems, shakes, and racing thoughts, and that they occasionally cause her to go back to sleep. She indicated her panic attacks last five minutes to sometimes all day.

(Tr. 19). The ALJ further noted Plaintiff's "anxiety, daily panic attacks, and almost daily crying spells" in his discussion of Dr. Campbell's opinion (Tr. 20).

Plaintiff also references certain notations in Plaintiff's treatment records from Manchester Family Medicine. While the ALJ did not specifically address the points Plaintiff focuses on, he was not required to do so. *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) (ALJ's failure to discuss certain records "does not indicate they were not considered. An ALJ need not discuss every piece of evidence in the record for his decision to stand."). It is clear the

ALJ reviewed these medical records and was aware of the significance of Plaintiff's issues with anxiety.

Other evidence the ALJ discussed, which indicates he properly evaluated Dr. Campbell's opinion, includes Dr. Campbell's own findings that Plaintiff provided good, coherent responses to his questions; that Plaintiff exhibited "only slight depression" and "slight anxiety"; she demonstrated "clear, logical thought processes, intact memory functions, an ability to follow instructions, average intelligence, and a good capacity for abstract thinking as well as understanding"; and she had only "mildly impaired short-term memory functions as well as concentration." (Tr. 20). The ALJ further noted Dr. Campbell's observation that Plaintiff had never received treatment from a mental health professional at that time (Tr. 20, 310).

The ALJ also cited the May and September 2016 findings from the nonexamining DDS psychological consultants, who found Plaintiff was only moderately limited in her ability to respond appropriately to changes in the workplace setting, and not significantly limited in her ability to take appropriate precautions, travel to unfamiliar places, set realistic goals, and make plans independently of others (Tr. 21, 64-65, 112-13). The ALJ assigned these opinions great weight.

Earlier in the decision, the ALJ discussed how Plaintiff was able to care for her personal needs, care for pets, cook simple foods, get her child dressed, do laundry & some limited cleaning, drive, shop, and pay bills (Tr. 18). The ALJ also noted Plaintiff wrote in her function report that she was always able to pay attention, follow verbal and written instructions, and get along with authority figures (Tr. 18).

13

The ability to "adapt or manage oneself" is one of the functional criteria the SSA uses to evaluate mental disorders. It "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00(E)(4). Examples of specific adaptation abilities include: initiating and performing tasks, working at an appropriate pace, being aware of hazards and taking appropriate precautions, and changing work activities without being disruptive. A "marked limitation" means a person's ability to function independently, appropriately, effectively, and on a sustained basis in a given area is seriously limited. *Id.* 12.00(F)(2)(d). The ALJ interpreted the evidence cited above as being inconsistent with this level of limitation in adapting. Plaintiff has not demonstrated the ALJ's interpretation is unreasonable or not supported by the record. "Whether a medical opinion is 'not inconsistent' with the other substantial evidence is a judgment that adjudicators must make in each case." SSR 96-2p, 1996 WL 374188, at *3.

It is also worth noting the ALJ found Plaintiff had a moderate, limitation in adaptation, and he assigned an extremely restrictive mental RFC that allows for only occasional, casual contact with supervisors, co-workers, and the public; only non-confrontational, supportive supervision; and only occasional, routine workplace changes. Plaintiff does not identify any further restrictions she needs to accommodate her allegedly marked inability to adapt, nor does Dr. Campbell define what he means by "marked." *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition . . . ." (citation omitted)). At least one federal court in Tennessee has held that an RFC providing for "only gradual, infrequent workplace changes" was sufficient to account for a "marked limitation" in a claimant's ability to adapt, where the limitation had been assigned by a consultative examiner

who did not define "marked," as it applied to the claim in that case. *Yearwood v. Colvin*, No. 3:12-cv-01091, 2013 WL 4597110, at *10-12 (M.D. Tenn. Aug. 29, 2013).

Plaintiff argues the VE "testified that an individual who had the mental limitations assessed by Dr. Campbell would be precluded from Plaintiff's past work," but the hearing testimony Plaintiff cites does not reflect this. Rather, Plaintiff asked the VE to assume a hypothetical individual who had "**severe impairments** in ability to adapt to change such that there should, on average, **be about two changes in their work setting per year**." (Tr. 49 (emphasis added)). Plaintiff does not cite to any authority equating "marked" (Dr. Campbell's usage or otherwise) with "severe," or with only two changes per year, and the Court could find none.

### D. Physical CE - Dr. Leveck

Dr. Leveck concluded Plaintiff "could stand, walk, and sit eight hours out of eight with five-minute breaks every 30 minutes," and she could "lift and carry 10 lbs occasionally with limitation due to her low back pain." (Tr. 317). As noted above, the ALJ assigned this opinion "some weight," noting "it is not completely consistent with Dr. Leveck's exam results or with the medical evidence as a whole." (Tr. 20). The ALJ explained he found the opinion was "not completely consistent with Dr. Leveck's exam results or with the medical evidence as a whole." (Tr. 20). Ultimately, the ALJ assigned a physical RFC for a reduced range of light work, which allows for lifting up to 20 pounds occasionally and 10 pounds frequently, standing or walking up to six hours per day, and sitting up to six hours per day (with other postural limitations).

Plaintiff contends that "[i]t goes without saying that Dr. Leveck was aware of his own examination findings when he formulated his opinion, as it was offered contemporaneously with his examination." [Doc. 16 at Page ID # 442]. As a result, Plaintiff suggests, Dr. Leveck's opinion

must be consistent with his exam findings, and the ALJ's finding to the contrary shows the ALJ inappropriately interpreted Dr. Leveck's clinical findings, or "played doctor."

The Commissioner, however, cites evidence in Dr. Leveck's opinion that is plainly inconsistent with Dr. Leveck's opinion, particularly as to her need for a five-minute break every thirty minutes. For example, straight leg testing was negative on the left side and revealed only mild pain on the right; Plaintiff had normal station, standard gait, tandem gait, and heal/toe walk; Plaintiff "could move between the chair and table readily," and she did not use an assistive device [Doc. 20 at Page ID # 462]. These are not difficult concepts that require a medical expert to interpret, and the ALJ cited all of this evidence in his decision (Tr. 20). It is not as if the ALJ interpreted raw X-ray data; rather, he looked at the essentially mild exam findings and found them inconsistent with the very restrictive break requirement Dr. Leveck included in his opinion.

The Court further observes Dr. Leveck's opinion is internally inconsistent, as he finds Plaintiff "could stand, walk, and sit for eight hours" per day, but then opines she needs ten minutes' worth of breaks every hour (Tr. 317).

The Commissioner also cites other record evidence relied on by the ALJ, which is inconsistent with aspects of Dr. Leveck's opinion. In April 2014, Plaintiff was diagnosed with grade two L5-S1 anterolisthesis by a physician's assistant ("PA") at Casper Orthopaedic Associates. This is the same grade Dr. Leveck diagnosed Plaintiff with two years later (admittedly based on the same X-rays). As the ALJ noted, Plaintiff's Casper Orthopaedic records reflect Plaintiff had only mild paraspinal tenderness, and full hip strength (Tr. 20, 330). Although the PA recommended Plaintiff "would need a possible TLIF," a type of surgery, Plaintiff informed the PA she was trying to get back to work and just wanted pain medicine (Tr. 330).

16

The nonexamining DDS medical consultants, who reviewed Plaintiff's record including Dr. Leveck's opinion, found Plaintiff had the ability to lift up to 20 pounds occasionally, and 10 pounds frequently. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)) ("The ALJ was not precluded from relying on the opinion of a non-examining physician.").

Other than the brief Casper Orthopaedic records and Dr. Leveck's report, the record contains few treatments for Plaintiff's back. The Court acknowledges references to Plaintiff's lack of insurance, but Plaintiff does not raise any issues concerning her lack of treatment due to lack of insurance in her brief. More importantly, the record does not appear to reflect any attempts by Plaintiff to obtain low- or no-cost treatment options. *See Moore v. Comm'r of Soc. Sec.*, No. 14-1123-T, 2015 WL 1931425, at *3 (W.D. Tenn. Apr. 28, 2015) ("Plaintiff argues that his lack of treatment is because he did not have medical insurance. However, there is no evidence that he ever sought treatment offered to indigents . . . ." (citing *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005); *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999)).

Plaintiff seems to take the position the ALJ erred because he discounted Dr. Leveck's opinion simply because it wasn't "100% consistent" with the record [Doc. 16 at Page ID # 442]. Even assuming the ALJ was looking for perfect consistency (although there is no indication he was), the regulations provide that "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. §§ 404.1527(c)(4); 416.927(c)(4). Accordingly, while perfect consistency is never **required**, the more consistent the better. The ALJ reasonably found that the amount of inconsistency in this case

justified assigning only some weight, but not no weight.  Moreover, the ALJ clearly considered that Dr. Leveck examined Plaintiff, another relevant factor in this case.

Finally, it is worth reiterating the ALJ was not required to give good reasons for his decision not to defer to Dr. Leveck.  The decision reflects the ALJ evaluated Dr. Leveck's opinion using the relevant factors.  Plaintiff has failed to show any harmful error in the ALJ's consideration of Dr. Leveck's opinion, and Plaintiff's motion will be denied in this regard.

In sum, the Court concludes Plaintiff has not "persuasively shown that the ALJ erred in conducting [the] difficult task" of weighing the record evidence.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (further holding "we see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence"); *accord DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry picking" allegations are seldom successful because crediting them would require courts to re-weigh record evidence).  The Sixth Circuit has consistently upheld the discretion vested in ALJs to weigh record evidence in assessing disability status, and this Court must do the same.

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

    (1) Plaintiff's motion for summary judgment [Doc 15] is **DENIED**.

    (2) the Commissioner's motion for summary judgment [Doc. 19] is **GRANTED**; and

    (3) the Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:                         s/ *Susan K. Lee*
                                           SUSAN K. LEE
                                           UNITED STATES MAGISTRATE JUDGE